Next case is Phyllis Huster v. j2 Cloud Services, v. Charles Pobo et al., 2016-1639. We'll be ready when you are, Mr. Mann. Good morning, Your Honor, and may it please the Court. I'm Philip Mann on behalf of the appellant, Phyllis Huster. The District Court made two fundamental errors in the case below. First, the District Court substituted itself as a finder of fact and basically determined, made the decision that no facts could support Ms. Huster's claim that she was defrauded by Charles Pobo. The second error that the Court made was, I believe, in misinterpreting this Court's decisions in Cho and Larson and concluded that Ms. Huster had no standing to bring a claim for correction of inventorship under Section 256. Do you agree that in the complaint that the only injury that's alleged is the fact of ownership or the alleged right to be listed as an inventor? Well, yes, Your Honor. Obviously, the words on the paper say what they say, and there's no direct, as far as I know, no direct allegation of reputational harm. But I think that follows from what the case has been all about. And with respect to what you proffered below, it was purely reputational harm, correct? We are making the allegation now that it's purely reputational harm. We have other claims for potential financial compensation to Ms. Huster, but that comes as a result of her oral contract with Mr. Bobo, which is basically a separate issue. On the standing issue, the correction of inventorship under Section 256, we are saying that reputational interests alone would support that. Are you asking us to basically reach the question in Cho, which we implied was a possible issue but that we never had to reach? In other words, in Cho we said it's possible that merely being an inventor on a patent is a valuable right and that that might be enough for standing, but we don't need to decide that question. And so you're asking us to decide that question? I believe, and I'm going from memory here, I can't represent this as pure fact, I believe this court in Chook v. Seagate may have already addressed that question. Doesn't the court here decide that there wasn't an adequate showing of facts on the reputational aspect? Well, I don't think the court said that. What the court said was that based, and I think it was a misinterpretation of the Larson case, what the court said is that the facts here are closer to the facts in Larson than they are in Cho, and I can demonstrate that that's a misunderstanding on the part of the district court. There were several factual distinctions between Mr. Larson and Ms. Huster here. The principal one is in the Larson case, Mr. Larson was clearly listed as one of the inventors on the patent. Ms. Huster's complaint here is that she should be listed on the patent and isn't. And Larson never even pled 256, right? No, well, he did sort of a reverse 256. What he was saying is I want to use 256 to kick these other inventors off of my patent. He was sort of a reverse correction saying people on the patent shouldn't be there. Our position is in Mr. Bobo's patent, which doesn't name Ms. Huster, Ms. Huster says I should be on it. The district court here said even if a reputational interest was sufficient, Ms. Huster has failed to plead any facts relating to a reputational interest. Yes, Your Honor, that again, this was a case that came before it came to me. The complaint says what it says. I can't change what the words are on the paper. Right. But that can be corrected. We're not appraising your performance. We're judging the case and the decision of the district court. And I would say, Your Honor, the way to fix that, I think that can be fixed by a liberal correction of the pleadings. You mean you get two bites at the apple? I know Apple isn't involved here. I remember in my earlier years, it was a common proceeding in trials to make a routine motion to conform the pleadings to the evidence. Again, I think this may be putting formal for substance here. I would ask that. So the correction of inventorship was done on a motion to dismiss, right? I believe that was dismissed. Lots of things are dismissed. The question is on what motion. Wasn't this on a Rule 12b motion? It was, Your Honor. So is it your position that the mere invocation of 256, the statement that she has the right to be an inventor, that that should be enough, at least at the pleading stage, for purposes of standing? Yes, and if there's a question as to if the court or if one of the parties says, make a motion for a more definite statement, if you say we don't fully understand this, can you flesh it out a little bit more, then she could certainly come in and say. Why didn't she ask for an opportunity to amend? It seems to me that all she would have had to do under Shook is put in a sentence saying, I'm still working in this field. That would have been pretty much the end of the inquiry, right? Again, Your Honor, you're asking me questions that I can't answer not being there. In hindsight, that would make sense. Why she didn't do it, I can't answer as I stand here. But I agree that, and I think the court could have even invited that, say that you don't have, I've seen cases where they've gone through iterations of Fourth and Fifth Amendment. Some district judges are nicer than others, but that doesn't mean they have to do it. I agree, Your Honor. And again, I can't answer that question other than to simply say that I was hoping that you'd have another chance to maybe go back and try to answer some of these questions or put in the information that could be put in. Do I understand right that in the Eleventh Circuit, a dismissal for lack of standing must, as a matter of law, be a dismissal without prejudice? I do not, I don't know the answer to your question, Your Honor. Which would give you another opportunity, would it not? It would. I don't know the answer. I hope that's the case. Well, that's certainly what you argued in your brief, right? I believe there was a, well, my question is that that is a case we cited in the brief. My question is, and what I can't answer, Jane, here, is whether this was a dismissal without prejudice or with prejudice. Well, regardless of what it was, what it had to be, as I understand the Eleventh Circuit law, was a dismissal without prejudice. So whether that, if on that assumption, we can either say that's what it was, or we can say we don't know what it was, but then it has to be modified, clarified. That would work, too, I believe. What about the state law claims, statute of limitations? Okay, on the statute of limitations, I think. She knew early that she'd been left out. I'm sorry, Your Honor? She knew early that she'd been left out. I respectfully disagree with that. That is the central factual question that the statute of limitations, in fact, turns on. If we agreed that she knew early, you know, we're all in agreement that four years was the statute of limitations, and we're all in agreement when this case was filed in 2013. Those facts and numbers are not the same either. And the first patent issued in 95. Yeah, it was filed in 95. I don't remember when it was issued. I believe it was filed April of 95. I don't recall the issuance date. So it's very seriously disputed when she found out about the fact that the patent application was filed without her name on it, and that's what we keep focusing on. It's not a question of was she aware that a patent application had been filed. 97. So by 97, there's public, at least one public patent issuance. It's 16 years from then to the filing of this lawsuit, right? That's correct. But, again, our position is that there was no inherent duty on her part to make a search for this patent. The overwhelming majority of people live their lives without it. But wait, she met with lawyers to discuss the application for a patent. Lawyers who have since claimed that they were not their lawyers. That's the significance of the motion to dismiss that law firm. That law firm has formally taken a position in court that she was not a client. And elementary law lawyers have no business discussing client matters with people who are not clients. So their position would have to be, if we accept what they say, they would not be in a position to share information about a pending secret patent with Ms. Huster. Now, it's true that the patent would be issued along with the 8 million other patents that are out there. Her position is she did not make any sort of search for that patent. She had no reason to. She had no reason to except that she claims she was an inventor. She was apparently involved in some way and had a deal. And now she claims years later that she was left off. Well, under those circumstances, she really should have been expected to keep track of the filing of an invention that she claimed she was an inventor of. Well, this precisely illustrates my point, Your Honor. The question is whether that's reasonable. And that's why we're saying that this should be decided after a trial on the merits and should be decided by the jury rather than a district court or, at this point, by this court. There are factual questions here. I'm not saying that I can prove at this point that she was defrauded by Mr. Bobo. What I am saying is because there are questions of this nature and because it's, you know, why did you do this? Why did you not do that? Is your explanation plausible? Do you believe this? You know, does that make sense? That is precisely why this is a type of question that should be presented to a jury and why the grant of summary judgment was, in our view, incorrect. We would ask that the court change that and send this back down. Let us develop the facts. Let us present this to the jury. Let the other side cross-examine Ms. Huster as much as they want, see what answer she comes up with, and let six or 12 people decide whether it makes sense. And I'll reserve the rest. Unless the court has any more questions, I'd like to reserve the rest of my time. We will do that for you. Thank you, Your Honor. Mr. Englund, I think you're representing the non-inventor defendants. That's correct, Your Honor. May it please the court. My name is Brian Englund. I'm from Sullivan and Cromwell, and I'm on behalf of all of the non-inventor defendants. Asking this court to affirm the decision, the district court followed this court's most recent announcements on when you have standing in this sort of a context. It was a straightforward application of those decisions, and she came to the right decision. But in our decision in Shook, we pretty much said as long as you invoke 256 and as long as you're working in the field, that should be enough, right? Well, actually, I respectfully disagree with that. I think Shook went a little further. The allegations in Shook are far more detailed than any of the allegations we have here. You had direct, concrete, particularized allegations that he had had reputational harm, that his prior employer had spread bad information about him in the marketplace, and significantly that he had an expert opinion that said his employment prospects had specifically been damaged as a result of the reputational harm that he had there. And in this court's non-precedential but follow-on decision, the most recent invocation of this in the PepsiCo case, this court said not just be a concrete, particularized reputational harm, but it has to be tied to economic consequences, which is the natural follow-on from Shook, which did have those. Right, but we've never said that in a precedential opinion. That's right. And in fact, if you look at Cho, we limited the analysis to reputational injury. In Cho, that's right. But Shook was the case that answered that question, that said you can have this reputational harm, but there were allegations of concrete economic consequences and actual invocation of the reputation. But we didn't rely on economic consequences in Shook. I mean, it's one thing to say that there were more allegations of reputational harm, but never in Shook did we say that that reputational harm had to be directly tied to established economic consequences, to just get past a motion to dismiss. No, Your Honor, you're correct. That's where the PepsiCo case took that to the next step in a non-precedential decision. But at the same time, even if that were okay that you could have just this bare-bones allegation, which, again, I don't think is the proper reading of Shook, but even in that context, if we go back to the third amended complaint here, this isn't the first. This was a third amended complaint. There are no allegations of reputational harm. The word reputational does not appear in the complaint anywhere. She alleges purely economic interests. The idea that they were relying on a reputational harm came up for the first time here on appeal. She had three amended complaints. She filed five opposition briefs to the motion to dismiss, and in none of those did she really rely on any of this reputational harm. And significantly, she never once asked for leave to amend. And that decision is reviewed under the Eleventh Circuit Law, and under the Eleventh Circuit Law, the court's decision whether to dismiss a case with prejudice or without is reviewed under an abuse of discretion. There's been no issue. Except for the fact that Eleventh Circuit Law is pretty clear that certain dismissals are on the merits and certain are not, and when the question is standing, it's not on the merits, so it can't be with prejudice. Well, I believe that the court can make that determination if they do, and if the plaintiff is given a full and complete opportunity to air those issues, there would be no reason if they don't even ask for leave to amend to do it again. So I believe that it was correct and within the court's discretion to do it as a dismissal with prejudice and move forward with the summary judgment portion of the claim. Further, with respect to... Can I ask why the essentially conditional interest that she has in PA, whatever it's called, the PA company that she, I guess, once had ownership interest in, but that at least until she pays the $40,000 attorney's fees judgment in the state of Washington, she doesn't have an interest in. But why is that kind of conditional economic interest in the company that owns whatever patent rights she is entitled to not sufficient for Article III purposes, the way an option might be? Well, I think if you go back... Well, first, it's not a conditional interest that the assigning order from the court says she has no interest. If I remember right, it says expressly until such time as she pays the $39,000 and change. And then it goes back to her. This is... The assignment is in the record at 787. Right. Maybe I'm misremembering. The order... Well, the assigning order says giving all interest direct and indirect, and this is at 788. The further order says that all the debtors are divested of any right, title, and interest whether direct or indirect in PA Technologies LLC. And said charging orders and assignments shall remain in effect until the judgment is satisfied. Until the judgment is satisfied. That's right. Right. So she does have an interest. It goes back to her when the judgment is satisfied, if it's satisfied. If it's ever satisfied. Right. So that's exactly what I meant by a conditional interest. It's actually... So it would be fine if there was evidence that she's ever going to be able to satisfy this judgment, which is now considerably more with the interest and attorney's fees that are recoverable than the original $49,000. But just the chance that she might be able to do that puts us closer back to what Lujan counsels, that it can't be perhaps an interest. It has to be a concrete, particularized economic interest. And Ms. Hooster has offered no evidence that she'll ever be able to get that company back or take any steps to do that. There's no evidence in this record to support that inference. So an option situation would be different because at least in a case where the person with the option can say, well, yeah, I'm willing to exercise it. Yes, exactly. And here there's just no evidence in the record to suggest that she'll ever be able to do that. And that's why, again, we just keep going back to the allegations in the third amended complaint and the five different opposition briefs that she had that the appellant has had ample opportunity to look for and raise these issues and continually failed to do that. And the district court was not doing this on a blank slate because of the appellant's participation in other lawsuits. She's already actually been deposed twice, and there was actually a robust factual record to show that she did not have either the reputational or the economic interest necessary to establish standing. And under those facts and under that law. The record is pretty sad in terms of her success in dealing with lawyers, isn't it? Yes. It's been a frustrating experience for many of us for many years, Your Honor. And, I mean, for her too. Lawyers continually taking things on on a contingency and then once they don't get a settlement, they walk away. Or, you know, even the lawyers that she thought were representing her in the initial application and she thought they were her lawyers too because she was involved in all of those discussions and then they come and represent Mr. Bovo against her. I mean, you have a hard time thinking that the profession looks very good by the end of the day. Well, Your Honor, they didn't appeal the motion to disqualify, but this information is in the record and it's actually the district court weighed a lot of facts and found that she had no reasonable assumption that the original lawyers ever had a relationship with her. And her lawyer in Chicago who did withdraw noisily, the record, I think it's in the record and it shows that they had a pretty substantial disagreement over strategies. I just see that my time is up. Thank you, Mr. Wendland. We'll hear from Mr. Schoenfeller. Thank you. Schoenfeller or Schoenthaler? The latter. Schoenthaler, right. With an umlaut. That's correct. It got lost somewhere along the line. Good morning, Your Honors. May it please the Court. My name is Peter Schoenthaler. I represent Appellee Charles Bovo. The trial court in this case properly held on summary judgment that plaintiff's state law claims were barred by the four-year statute of limitations. I want to step back here. The appellant frames the issue incorrectly, I'll say. The appellant frames the issue in their statement of issues and in their brief that the trial court erred in holding on summary judgment that plaintiff knew more than four years prior to filing her complaint that she had been defrauded. That is overly simplistic because it does not incorporate the elements in the Georgia tolling statute. The proper issue before the court on the state law claims is, is there evidence in the record on summary judgment showing an intentional act of actual fraud involving moral turpitude by Charles Bovo? Can I ask, what is fraud that doesn't involve moral turpitude? Well, in Georgia, actually, and I'm going to speak off the cuff here, they have actual fraud and they have not actual fraud. Actual fraud is an act, okay? And I'm not talking an act versus an omission. It is an action, an affirmative action, which is somehow, and I'm no jurist at this level, that is somehow different from the lesser fraud. Okay. Which concealed the existence of a cause of action from plaintiff despite plaintiff's reasonable diligence to discover the cause of action such that the statute of limitations is told. In this case, it's told from 1996 until 2013. And the reason that is, is that's what appellant is asking for. And the reason they're asking for that is because under Georgia law, the statute of limitations starts to accrue on the day you can file suit. Okay? And... What day was that? Well, our position is it's the date she knew there was a problem, that she was not on the patent and believed she had a 50-50 deal to share the profits from any... And when you say patent, you mean patent... Patent application. Patent application. Correct. So going to the first issue of evidence in the record. This was not... This started out as a motion to dismiss after multiple briefing sessions. Okay? And the court understanding that there was a record out of Illinois where she was posed at least once in that case and once in another case, there was plenty of factual record, the judge converted it properly from a Rule 12b to a Rule 56 motion and gave reasonable time for the parties to brief or submit additional evidence on the issues. And she teed them up for the parties that this was on the statute of limitations. And the parties had every opportunity to submit evidence. And I asked the court to look at Appellant's brief versus Appellee's brief and look at the evidence cited, because there are lots of arguments made from Ms. Hooster's side. There's not a lot of evidence cited. The evidence that the judge relied upon in granting summary judgment was... There was no evidence submitted by plaintiff that there was any evidence that Charles Bobo actually had any intention to defraud. The only evidence in the record was silence for that long period of time. And what is silence in this case? Silence in this case, looking at it from Charles Bobo's perspective, is don't know that there's a problem because she's not an inventor. And that's why Georgia, to toll the statute requires an affirmative act. Silence in and of itself under the law in Georgia is not enough to toll. And I think this is a good example because if you don't know there's a problem, you're going to remain silent. Did the plaintiff here in the district court make any argument that there were different accrual periods for the different patents that she was left off of? I can only speak to my knowledge of the case. In my knowledge, I don't recall that argument being made, Your Honor. So the evidence that the district court had in front of it in silence. The argument that she made was that each time that they licensed it without admitting that they didn't have all the proper inventors, that there was an additional act, right? Right, but an act directed at whom? Her testimony is she had no idea until 2010 that this application had even been filed. So every time they filed, assigned it, or filed another patent, they're making a representation to the USPTO. But Charles Bobo, or whoever's filing them, are not making an affirmative statement to Ms. Hooster that, oh, by the way, we're now filing another patent and continuing our fraud upon you. There's no fraud in those actions directed towards the plaintiff. Those are actions taken, filed, and filed with the USPTO. But she never had any knowledge of them, and they were not actions taken towards her. What was, in order for any statute of limitations to start running, tell me if this is wrong, essentially the wrong needs to be completed, right? It doesn't start until whatever the last element of the wrong occurs. To put it another way, Your Honor, that is correct. To put it another way, you have to be able to file suit. Right. So I guess two questions. One, I keep thinking about the application question, which has nothing to do with what Mr. Bobo did or did not say or mislead or anything. Just when the cause of action actually was one that she could have sued on, why would that be the case for the filing of an application as opposed to the issuance of it? And if it's the filing of the application, why is that not a series of, I don't know how many patents there are issued here. Seven, I think. Seven or something? There must be seven applications, even if they're related to each other in the usual family way. Why would those not have accrued separately? If I understand the question, and I may get it wrong, to answer the first question I believe you asked, I don't believe, Your Honor, that there is a difference, practically speaking, between an application and a patent filing or the registration of a patent in this case. One naturally flows from the other, and the fact that she claims she should have been listed as a vendor on the application, this isn't a continuing tort. What if we were to assume that the patent had to issue before her claim would be right? What was the latest date of issuance within the statute of limitations? I don't know that, Your Honor. What about the latest application? I think 2011 is the last of the patents. I can't even correct you one way or the other. The 948 or 148. What about the last application? Each of these applications, if she was an inventor, she was an inventor on the initial patent, would have to have been an inventor on the initial patent. There was injury as to that, but wouldn't there be injury as to the last application as well? The statute of limitations would, under any circumstances, have commenced to run upon the grant of that initial patent. On that patent? On the first patent, correct. That's one injury related to the fraud. If a different injury relates to the fraud and the injury doesn't occur until either the application is filed or the patent issued, what's the latest filing of the application? Your Honor, it would be our position that the statute of limitations would have to run at the latest. Just a year. Give me a year. When was the last of the applications filed? I'm looking at these. It looks like 2006. 2006. Weren't they all part of the same series? That's correct, Your Honor. Thank you, Counsel. Mr. Mann has some rebuttal time. Thank you, Your Honor. Judge, I understand you represent observations on Ms. Huster's experience with lawyers. I hope that we can fix that. That really brings up the key essential here. This case has been hanging around for quite a while. We've had a lot of paper flying back and forth. But the best way to resolve this, if we were simply to take this case, develop the evidence, present it to a jury, get a question one way or the other, Ms. Huster's had her day in court, and at the end of the day, it would probably save everyone's time, including ours. A court of appeals cannot look at a case and say, gee, it wasn't handled that well below, and let's give them another chance. There's got to be an error of law, a clearly erroneous error of fact. Exactly, Your Honor. And the clearly erroneous error of law is the resolution of the facts contrary to Ms. Huster. Under the law, on a summary judgment standard, facts are supposed to be reasonable, inferences are supposed to be in her favor, and genuine issues are to be resolved by a fact finder or jury, not by the district court, and with due respect, this court or even me, for that matter. So that's why we're asking if we can just get this thing back to the court. Turning on to the specifics here, the counsel may have misspoke. It's not clear that Ms. Huster learned early on that she was not listed as an inventor on the patent. All the evidence that has been developed so far may suggest that she was aware that there was a patent application filed in April of 1995. These are basically some ray lines on some communications that came in and said patent application filed. None of those documents shows or even suggests that Ms. Huster was not an applicant on those patents. Remember, in her frame of mind, she had no experience with patents, no experience with patent lawyers. She did not know that you have to read an application. She did not know that you have to sign off on a declaration. This was entirely new to her. What she did know was she met with Jeff Sutcliffe, a patent lawyer at Hopkins and Thomas, who was taking care of the matter. So that's what she knew. She assumed, to the extent there was a reference to an application, she assumed it was the application that she, in fact, initiated. Remember, the evidence shows that she was the one who came up with the idea of contacting lawyers and trying to get a patent in the first place. She reasonably assumed they were looking after her interests. She found out in the course of a deposition in 2010 when someone who was actually being sued on one of these patents correctly figured out that Ms. Huster may be, in fact, an inventor, and that would call into question all sorts of questions about the patents. When did she first meet with the lawyer? I believe she first met with the lawyer sometime in 1993, 1994. It's in the papers. She didn't find out until 2010? 2010, yeah, exactly. What happened was, I know you're smiling, Your Honor, but what happened was she and Mr. Bobo had a parting of the ways at that point, and she was no longer actively monitoring this. And furthermore, again, evidence of fraud on the part of Mr. Bobo, this is in the papers, the patent was assigned to Net Office Solutions, LLC. The company Ms. Huster was with was Net Office, Inc. So even there, there's some suggestive creative corporation forming. The patent was not actually assigned and I don't believe has ever actually been owned by the company that Ms. Huster was a part of. The patent was, in fact, originally owned by a separate corporation that Mr. Bobo set up, Net Office Solutions, LLC. So, again, she would have no reason to know about these patent filings as a result of that. So you put it all together, it smells funny. Our theory is that there's some fraud going on here, but, again, we're asking that this can be submitted. The case can be developed, do all the discoveries, submit it to a jury, and find out what's what. Thank you, counsel. We'll take the case under advisement.